UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FREDERICK C. S., JR.,

                              Plaintiff,

v.                                                    1:23-cv-0723
                                                      (GTS/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

HILLER COMERFORD INJURY              JUSTIN M. GOLDSTEIN, ESQ.
& DISABILITY LAW
Counsel for Plaintiff
6000 North Bailey Avenue - Suite 1a
Amherst, NY 14226

SOCIAL SECURITY ADMINISTRATION       JASON P. PECK, ESQ.
Counsel for Defendant
Office of the General Counsel
6410 Security Boulevard
Baltimore, MD 21235

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT AND RECOMMENDATION**</u>

## I.    INTRODUCTION

Frederick C. S., Jr. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or

"Defendant") denying his application for benefits.  Dkt. No. 1.  The matter was referred to the

undersigned for a report and recommendation by the Hon. Glenn T. Suddaby, United States

District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.  Dkt. Nos. 14, 15.  Plaintiff filed a reply.  Dkt. No. 16.  For the reasons set forth below, the Court recommends Plaintiff's motion for judgment on the pleadings be denied and Defendant's motion for judgment on the pleadings be granted.

## II.    BACKGROUND

Plaintiff was born in 1971, and was 44 years old at his alleged onset for date of disability.  T. 330.[1]  He has a high school education, and previously worked as a truck driver.  *Id*. at 305-16, 320.

On December 1, 2020, Plaintiff protectively filed an application for benefits.  *Id*. at 188-91.  He alleged disability beginning January 21, 2016, due to a traumatic brain injury ("TBI"), headaches, loss of memory, loss of left eye, loss of ring finger on left hand, neuropathy in his feet, and arthritis.  *Id*. at 318, 334, *see id*. at 124, 144, 166, 318.  His applications were initially denied on May 10, 2021, and again upon reconsideration on July 6, 2021.  *Id*.  On January 10, 2022, Plaintiff appeared before Administrative Law Judge ("ALJ") David F. Neumann via telephone.  *Id.* at 11, 45-77.  A vocational expert ("VE") also testified.  *Id*.  On January 31, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  *Id*. at 11-21.  On April 18, 2023, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id*. at 1-5.  This action followed.  Dkt. No. 1.

---

[1]  The Administrative Record/Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.  Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

### III.    APPLICABLE LEGAL STANDARDS

#### A.    Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147,

153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

**B.    Standard for Benefits**

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Additionally, the claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).[2] The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

---

[2] While the supplemental security income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess*, 537 F.3d at 120; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  The claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working.  *Id.*

## IV.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process promulgated by the Commissioner for adjudicating disability claims.  *See generally*, T. 11-24.  At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act though December 31, 2021, and had not engaged in substantial gainful activity since January 21, 2016, the alleged onset date.  *Id.*  at 14.

At step two, the ALJ determined Plaintiff has the following severe impairments: minimal degenerative arthritis of the cervical spine, minimal degenerative changes of the lumbar spine, loss of left ring finger, loss of the left eye, and obesity.  *Id.*  He found Plaintiff's hypertension, obstructive sleep apnea, chronic tension-type headaches, and status-post traumatic brain injury are non-severe impairments.  *Id.*  The ALJ further determined Plaintiff's medically determinable mental impairments of depressive disorder, general anxiety disorder, and affective disorder are non-severe.  *Id.* at 14-16.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 16.  Next, "[a]fter careful consideration of the entire record," the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work, with certain additional limitations, specifically:

> he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; can perform pushing and/or pulling motions with the upper and lower extremities within the aforementioned weight restrictions; should avoid unprotected heights; could occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; should avoid climbing ropes, ladders, and scaffolds; and has no vision in his left eye.

*Id*. at 17.  At step four, the ALJ found Plaintiff unable to perform any past relevant work.  *Id*. at 20.  At step five, the ALJ determined, based on his age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy Plaintiff could perform. *Id.*  Accordingly, the ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act.  *Id*.

## V.    DISCUSSION

Plaintiff argues the ALJ erred when failing to identify substantial evidence supporting the RFC and erred when failing to evaluate the medical opinions.  *See generally*, Dkt. Nos. 14, 16. Defendant argues substantial evidence supports the work-related limitations in the RFC.  See generally Dkt. No. 15.

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ.  *Id*. §§ 404. 1527(d)(2), 416.927(d)(2); *see Curry v. Comm'r Soc. Sec.*, 855 F. App'x 46 (2d Cir. 2021).  In general, the ALJ is obligated to formulate Plaintiff's RFC based on the record as a whole, not just upon the medical opinions alone.  *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018).  "[I]t is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution . . . ."  *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (Summary Order) (citing

*Richardson*, 402 U.S. at 399) (additional citation omitted).  Although the ALJ has the

responsibility to determine the RFC based on all the evidence in the record, the burden is on

Plaintiff to demonstrate the existence of functional limitations that preclude any substantial

gainful activity.  *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c), 416.912(c),

416.927(e)(2), 416.945(a), 416.946(c); *see Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir.

2018) (ultimately, it is plaintiff's burden to prove a more restrictive RFC than the RFC assessed

by the ALJ).

Under the applicable regulations, the ALJ must consider all medical opinions and

"evaluate their persuasiveness" based on the following five factors: supportability; consistency;

relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-

(c), 416.920c(a)-(c).  An ALJ is specifically required to "explain how [he or she] considered the

supportability and consistency factors" for a medical opinion.  *Id*. §§ 404.1520c (b)(2),

416.920c(b)(2).

With respect to "supportability," "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

or prior administrative medical finding(s) will be."  *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1).

With respect to "consistency," "[t]he more consistent a medical opinion(s) or prior

administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be."  *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2).  Failure to

properly assess either factor is a procedural error subject to harmless error analysis.  *See, e.g.*,

*Schillo v. Saul*, 31 F.4th 64, 75 (2d Cir. 2022); *Loucks v. Kijakazi*, 21-cv-1749, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (Summary Order).

### A.    Mental Impairments

Plaintiff raises several issues with the ALJ's evaluation of his mental limitations.  *See generally*, Dkt. No. 14 at 13-21; Dkt. No. 16 at 1-8.  Plaintiff argues substantial evidence does not support the ALJ's finding of no severe mental impairment at step two, and the ALJ further erred because he failed to consider Plaintiff's mental impairments, even if non-severe, when formulating the RFC.  Dkt. No. 14 at 13-14.  Relatedly, Plaintiff contends the ALJ failed to evaluate the opinion evidence and substituted his lay opinion.  Dkt. No. 16 at 1-6.  For reasons explained below, the Court disagrees.  *See also* Dkt. No. 15 at 6-14.

"Where, as here, mental impairments are at issue, the Commissioner directs administrative adjudicators to employ a 'psychiatric review technique' (sometimes referred to as a 'special technique')."  *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 151 (N.D.N.Y. 2021) (internal quotations and citation omitted).  The psychiatric review technique "helps administrative law judges first determine whether claimants have medically determinable mental impairments . . . . [then] determine whether medically determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)."  *Id*. (citations omitted, cleaned up).

> At the first step of this special technique, the ALJ must evaluate "symptoms, signs, and laboratory findings" to determine whether the claimant has one or more medically determinable mental impairments.  20 C.F.R. § 404.1520a(b)(1).  If so, at step two of the special technique the ALJ must rate the degree of functional limitation that results from the medically determinable mental impairment(s).  § 404.1520a(b)(2).
>
> This involves the consideration of the degree of limitation present in "four broad functional areas": (1) understanding, remembering or

> applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. § 404.1520a(c)(3).
>
> These four functional areas are measured on a five-point scale that ranges between "none," "mild," "moderate," "marked," and "extreme," with the last point on the scale representing "a degree of limitation that is incompatible with the ability to do any gainful activity." § 404.1520a(c)(4). If, however, the degree of limitation in each of these areas is "none" or "mild," the impairment will be considered non-severe absent evidence that "otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." § 404.1520a(d)(1).

*Nedzad O. v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 37, 44 (N.D.N.Y. 2021). "Application of this process must be documented and the ALJ's written decision must reflect application of the technique and include a specific finding as to the degree of limitation in each of the four functional areas." *Richard H. v. Comm'r of Soc. Sec.*, 17-CV-0515, 2018 WL 4627118, at *3 (N.D.N.Y. Aug. 15, 2018) (Dancks, M.J.) (citing *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008); § 404.1520(a)(e)), *report and recommendation adopted*, 2018 WL 4625402 (N.D.N.Y. Sept. 26, 2018) (Hurd, J.).

Here, the ALJ's narrative discussion reflects his application of the psychiatric review technique to assess Plaintiff's mental impairments. *See* T. 14-16. The ALJ found Plaintiff's "medically determinable mental impairments of depressive disorder, general anxiety disorder, and affective disorder, considered singly and in combination, do not cause more than minimal limitations in [his] ability to perform basic mental work activities and are therefore nonsevere." *Id*. at 14.

In making this determination, the ALJ observed "[t]here has been no in-patient hospitalizations since the alleged onset date, no significant ongoing psychiatric treatment, a psychiatric exam[] showed a normal mood and affect and psychiatric examinations and

observations were normal." *Id*. at 14-15 (internal citations omitted).  In considering the four

broad mental functioning areas, the ALJ concluded Plaintiff has (1) no limitation understanding,

remembering, or applying information; (2) a mild limitation interacting with others; (3) a mild

limitation concentrating, persisting, or maintaining pace; and (4) a mild limitation in adapting or

managing oneself.  *Id*. at 15.

 Plaintiff argues the ALJ "rejected" his mental impairments and improperly based his

severity determination on the lack of hospitalization or significant psychiatric treatment.  Dkt.

No. 14 at 14.  To be sure, "[c]ourts have reasoned that a claimant's lack of treatment for a mental

illness does not indicate that his or her condition is not severe because 'mental illness is

notoriously under-reported and because it is a questionable practice to chastise one with a mental

impairment for the exercise of poor judgment in seeking rehabilitation.'"  *Krach v. Comm'r of

Soc. Sec.*, 13-CV-1089, 2014 WL 5290368, at *5 (N.D.N.Y. Oct. 15, 2014) (Suddaby, J.)

(quoting *Day v. Astrue*, No. 07 Civ. 157, 2008 WL 63285, at *5 n. 7 (E.D.N.Y. Jan. 3, 2008)

(internal quotation marks omitted) (other citations omitted)).

 However, the ALJ here identified the lack of treatment as one factor for finding

Plaintiff's depressive disorder, general anxiety disorder, and affective disorder to be non-severe.

*See* T. 14-15.  The ALJ further explained Plaintiff's mental status examinations indicated a

"normal mood and affect," and brief depression screenings were negative.  *See, e.g.*, *id*. at 462,

466, 569, 578, 577, 582, 585, 586, 595.  The ALJ also considered Plaintiff's headaches and noted

"[w]hile the claimant has reported difficulty with memory, the overall record does not document

objective findings of memory loss."  *Id*. at 14, 15.  For example, during the April 15, 2021,

psychiatric evaluation, discussed below, Plaintiff's recent and remote memory skills were intact,

and he could recall 3 objects out of 3 immediately and 2 out of 3 after a delay, and could repeat 5

digits forward and 4 digits backwards.  *See id*. at 527.  Thus, Plaintiff's challenge to the ALJ's discussion on lack of treatment is without merit.  *See Krach v. Comm'r of Soc. Sec.*, 2014 WL 5290368, at *5.[3]

Plaintiff also argues the ALJ erred in his evaluation of the opinions of consultative examiner Patrica Cameron, Psy.D., and State agency psychological consultants O. Fassler, Ph.D., and T. Inman, Ph.D.  Dkt. No. 14 at 16-18.  The record does not contain an opinion from a treating source.

On April 15, 2021, Plaintiff was consultatively evaluated by Dr. Cameron.  T. 525-29.  Plaintiff indicated he lives alone, drives, cooks, cleans, does laundry, tends to his personal needs, and manages his finances.  *Id*. at 525, 527.  Plaintiff described a typical day as sitting in his chair and watching television.  *Id*.  He has a cell phone he uses for texting, phone calls, e-mail, social media, and playing games.  *Id*.  He has strong family relationships and some friends.  *Id*.

---

[3]  The cases Plaintiff cites are readily distinguishable.  Dkt. No. 14 at 14.  *See, e.g.*, *Garcia v. Comm'r of Soc. Sec.*, No. 19-CV-6056, 2020 WL 6792389, at *4 (W.D.N.Y. Nov. 19, 2020) (finding remand was warranted where the ALJ improperly disregarded both treating physicians' opinions under the prior regulations and placed undue emphasis on the "repeated references to the lack of hospitalizations and Plaintiff's normal mental health examinations" because the record also contained "countless evidence of her examinations when Plaintiff appeared moderately anxious, crying, angry, with having short term memory problems, impaired judgment, limited sense of responsibility, labile and constricted affect, apprehensive mood, pressured and rapid speech, irrational thinking, and with only an occasional smile" in addition to treatment notes "repeatedly identifying symptoms associated with PTSD, bipolar, panic disorders and agoraphobia such as her daily panic and anxiety attacks, depression, feelings of fear, including fear of dying, loss of interest, low energy, hopelessness, nervousness, shortness of breath, fatigue, crying spells, hypersomnia, irritability, sense of impending doom and failure, delusions and auditory hallucinations, night tremors, flashbacks, obsessive thought, guilt, and other symptoms," despite regular treatment); *Kathleen M. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1040 (TWD), 2022 WL 92467, at *8 (N.D.N.Y. Jan. 10, 2022) (finding "the absence of a recent psychiatric hospitalization does not support an affirmative finding that Plaintiff was capable of work" and did not outweigh "extensive evidence indicating Plaintiff's mental health issues have impacted her ability to work).  Here, Plaintiff points to no evidence the ALJ ignored or mischaracterized.  *See generally*, Dkt. Nos. 14, 16.

Plaintiff has no past psychiatric hospitalizations, no outpatient treatment, and no current treatment. *Id*. Plaintiff reported frequent awakening during night; excessive apprehension; irritability; agitation; anxiousness; being short tempered; issues with memory; concentrating difficulties; difficulty learning new material, forgetting steps to instructions; being easily distracted, and difficulties focusing. *Id*. at 525.

Following a mental status examination, Dr. Cameron indicated Plaintiff was cooperative and had an adequate overall presentation. *Id*. at 526. He was dressed casually, and his personal hygiene was satisfactory. *Id*. Plaintiff's motor behavior was restless and his posture was slouched. *Id*. His speech was fluent and clear. *Id*. Expressive and receptive language skills were adequate. *Id*. Plaintiff's thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting. *Id*. His mood was irritable and his affect was agitated. *Id*. He had clear sensorium and was oriented to person, place, and time. *Id*.

Plaintiff's attention and concentration were intact. *Id*. at 527. He could do counting and simple calculations. *Id*. He was able to do serial 3's and declined serial 7's. *Id*. As previously noted, Plaintiff's recent and remote memory skills were intact. *Id*. He could recall 3 out of 3 objects immediately and 2 out 3 after a delay. *Id*. He could repeat 5 digits forward and 4 digits backward. *Id*. Plaintiff's intellectual functioning was average to below average and his general fund of information was appropriate to experience. *Id*. His insight and judgment were fair to poor. *Id*. In a medical source statement, Dr. Cameron opined:

> There does not appear to be any limitation in his ability to understand, remember, and apply, simple or complex directions and instructions. Moderate limitation in his ability to use reason and judgment to make work-related decisions. Marked limitation in his ability to interact adequately with supervisors, coworkers, and the public. Moderate to marked limitation in his ability to sustain

> concentration and perform a task at a consistent pace as well as his ability to sustain an ordinary routine and regular attendance at work. Moderate to marked limitations in his ability to regulate emotions, control behavior, and maintain well-being. No limitation in his ability to maintain personal hygiene and appropriate attire or in his ability to be aware of normal hazards and take appropriate precautions.
>
> The results of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis.

T. 527-28. Dr. Cameron indicated the following diagnosis: unspecified depressive disorder, generalized anxiety disorder, and adjustment disorder. *Id.* Plaintiff's prognosis was guarded. *Id.* at 528.

On May 7, 2021, Dr. Fassler reviewed the available record, including Dr. Cameron's opinion, and determined Plaintiff has no limitation with understanding, remembering, or applying information; a mild limitation interacting with others; a mild limitation with concentration, persistence, or maintaining pace; and a mild limitation with adapting or managing himself. *Id.* at 110. Dr. Fassler assessed Plaintiff's mental impairments as non-severe. *Id.* On June 30, 2021, Dr. Inman affirmed the opinion of Dr. Fassler and explained:

> I have reviewed all the evidence in the file and the assessment of 5/7/21. The CE PhD opined moderate to marked to marked limitations, which is not c/w the evaluation, the other records in file, the absence of psych tx, and ADLs. Non-severe psych impairments are supported.

*Id.* at 151. Dr. Fassler opined Plaintiff's "psychiatric impairments are rated as non-severe." *Id.*

In finding Plaintiff's mental impairments non-severe, the ALJ found the opinions of Dr. Fassler and Dr. Inman "to be persuasive and consistent with the objective findings and lack of formal mental treatment." *Id.* at 16. By contrast, the ALJ found Dr. Cameron's opinion "to be unpersuasive because it is not consistent with the findings during the examination or supported

by the record as a whole." *Id*.  For example, the ALJ explained Dr. Cameron's medical opinion

was "inconsistent with the claimant's course of treatment showing no in-patient hospitalization

and no significant ongoing psychiatric treatment and inconsistent with the opinions of the

claimant's treating physician who examined him on multiple occasions noting normal mood and

affect" and a "normal" psychiatric evaluation on July 18, 2018.  *Id*. at 16, *see, e.g.*, *id*. at 565,

569, 575, 583.  Additionally, the ALJ noted that there is no mention of psychiatric conditions

during Plaintiff's evaluations with his primary care provider for back pain.  *Id*. at 16, *see, e.g.*, *id*.

at 601-24.  "An ALJ is entitled to consider both what the record does say and what it does not

say." *Christopher W. v. Comm'r of Soc. Sec.*, 23-CV-1106, 2024 WL 3846069, at * 4 (N.Y.N.D.

Aug. 16, 2024) (Stewart, M.J.) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553) (2d Cir.

1983)).

> "It is well-established that the ALJ has both the ability and the responsibility to resolve

conflicts in the evidence," *Amanda R.*, 556 F. Supp. 3d at 152, and "well settled that an ALJ is

entitled to rely upon the opinions of both examining and non-examining State agency medical

consultants, since such consultants are deemed to be qualified experts in the field of social

security disability." *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) (citations

omitted).  Therefore, the ALJ was free to accept Dr. Fassler's and Dr. Inman's findings of no

more than mild limitations in Plaintiff's mental functioning, despite the existence of evidence

which might support finding greater limitations.  *See*, *e.g.*, *Nedzad O.*, 577 F. Supp. 3d at 45

(concluding the ALJ did not err in finding the plaintiff's mental impairments to be non-severe,

explaining, "[a]lthough [one medical source] assessed 'moderate' limitations in several areas . . .

the ALJ ultimately concluded that her opinion was 'not persuasive' and 'not consistent with the

overall medical evidence and the treatment reports' . . . .").

Accordingly, substantial evidence supports the ALJ's step-two conclusion that Plaintiff's mental impairments were not severe. *See, e.g., Richard H.*, 2018 WL 4627118, at *6 (the ALJ did not err in finding Plaintiff's mental impairments to be non-severe where "the reports of mental issues were minor, and apparently managed by medications. Plaintiff did not receive any special treatment with mental health professionals, and he continued to engage in daily activities.").

Plaintiff next argues the ALJ failed to discuss Plaintiff's mental limitations after step two, "which is error even if there were only mild limitations in relation to the paragraph B criteria." Dkt. No. 14 at 13, 18-20. To be sure, there is case law supporting Plaintiff's argument. *See, e.g., id*. at 18-20. However, "[t]o conclude that remand is required in every case where the ALJ fails to provide some specific discussion in the section analyzing the RFC finding of why he or she chose not to incorporate limitations based on non-severe mental impairments despite the fact that the ALJ has otherwise explained why the evidence does not support any such mental limitations (and where a review of the evidence itself does not reveal evidence that the ALJ ignored or misinterpreted) would be to elevate form over function." *Donna L. v. Comm'r of Soc. Sec.*, 23-CV-0655, 2024 WL 3738067, at *3 (N.D.N.Y. Aug. 9, 2024) (Suddaby, J.). Such is the case here.

"Although the Court acknowledges that the ALJ does not discuss anything regarding Plaintiff's mental impairments in the section of his decision regarding the RFC finding, such fact alone does not suggest error, given that the ALJ's decision must be read as a whole and findings made in other sections can inform a reviewer of the basis of the ALJ RFC's finding." *Id*. at *1 (citing *Anastasia F. v. O'Malley*, 23-CV-0637, 2024 WL 1717094, at *4 (N.D.N.Y. Apr. 22, 2024) (Katz, M.J.) (noting that the "ALJ's decision should be read as a whole, and it would

indeed create needless formality to require the ALJ to repeat his analysis to satisfy [an analytic requirement]" related to a later step of the sequential evaluation analysis)); *see also Desiree S. v. Comm'r of Soc. Sec.*, 22-CV-0985, 2023 WL 7688690, at *6 (N.D.N.Y. Sept. 8, 2023) (Peebles, M.J.) ("In assessing the ALJ's findings, the decision must be read as a whole.").

Reading the ALJ's decision as a whole, including the ALJ's statement that the RFC assessment "reflects the degree of limitations the undersigned has found in the paragraph B mental function analysis[]," T. 16, the Court can glean his rationale underlying the absence of any mental limitations in the RFC finding. *See, e.g., Tricia W. Comm'r of Soc. Sec.*, 22-CV-794. 2023 WL 4471661, at 3 (N.D.N.Y. June 8, 2023) (Stewart, M.J.) (concluding the ALJ "did consider the mild limitation" where she specifically indicated that her "residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis").

Further, "a finding of a certain degree of limitation in an area of mental functioning when engaging in the psychiatric review technique prescribed by the regulations for assessing the severity of a mental impairment does not require any specific corresponding limitation in the RFC finding." *Maura B. C. v. Comm'r of Soc. Sec.*, 21-CV-0294, 2022 WL 2789102, at *6 (N.D.N.Y. July 15, 2022) (Peebles, M.J.); *see also Robert G. B. v. Comm'r of Soc. Sec.*, 21-CV-0291, 2022 WL 4482737, at *7 (N.D.N.Y. Sept. 27, 2022) (Peebles, M.J.) ("The fact that the ALJ found that plaintiff has a mild limitation in his ability to interact with others does not require that he find any corresponding limitations in the RFC if specific, work-related limitations are not supported by the evidence.") (citing *Michelle B. v. Comm'r of Soc. Sec.*, 20-CV-0332, 2021 WL 3022036, at *7-8 (N.D.N.Y. July 16, 2021) (Hurd, J.)).

Moreover, the ALJ discussed in detail the evidence relevant to Plaintiff's mental impairments at step two and evaluated the persuasiveness of the opinion evidence.  T. 14-16. The ALJ's decision reflects his adequate consideration of the relevant regulatory factors in weighing Dr. Cameron's opinion.  *See id*. at 16; *see also* Dkt. No. 15 at 7-8.  Indeed, the ALJ reasoned Dr. Cameron's opinions was "not consistent with the findings during the examination or supported by the record as whole."  *Id*. at 16.  For example, Dr. Cameron observed Plaintiff had "coherent and goal directed" thought processes and "fair to poor judgment" but then opined Plaintiff would have "moderate limitation in his ability to use reason and judgment."  T. 526, 528.  Dr. Cameron also observed Plaintiff had "intact" attention and concentration but then opined "moderate to marked limitation in his ability to sustain concentration . . . ."  *Id*.  The ALJ further reasoned Dr. Cameron's opinion was " inconsistent with the claimant's course of treatment showing no in-patient hospitalization and no significant ongoing psychiatric treatment and inconsistent with the opinions of the claimant's treating physician who examined him on multiple occasions noting normal mood and affect and the normal psychiatric evaluation."  *Id*. at 16 (internal citations omitted); *see, e.g.*, *id*. at 565, 569, 575, 577, 583, 585.

While the ALJ could have provided a more detailed explanation for his reasoning with regard to his consideration of the persuasiveness of Drs. Fassler and Inman's opinion, *see* Dkt. No. 14 at 16-17, Dkt. No. 16 at 4-5, a procedural error in not doing so does not automatically trigger the necessity of a remand.  *Edward J. v. Kijakazi*, 21-CV-150, 2022 WL 4536257, at *4 (N.D.N.Y. Sept. 28, 2022) (Stewart, M.J.) (citing *Ricky L. v. Comm'r of Soc. Sec.*, 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022)).  The Court agrees with Defendant that the ALJ's analysis of Dr. Fassler's and Dr. Inman's opinion was not so deficient to warrant remand. Dkt. No. 15 at 8-9.  Instead, the Commissioner's decision, when supported by substantial

evidence, can be affirmed "where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole." *John L. M. v. Kijakazi*, 21-CV-368, 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (Sannes, C.J.); *see also Donna L.*, 2024 WL 3738067, at *3 ("[I]t has long been accepted in this circuit that the failure of an ALJ to clearly or explicitly discuss certain pieces of evidence or explain why he or she found certain evidence insufficient to lead to a conclusion of disability is not harmful error so long as the court is able to glean the rationale of the ALJ's decision.") (citing *Enid N. C. O. v. Kijakazi*, 21-CV-0191, 2022 WL 4115633, at *2 (N.D.N.Y. Sept. 9, 2022) (Sannes, C.J.) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983))).

Here, the ALJ cited to the exhibits containing the opinions of Drs. Fassler and Inman, who each provided a very detailed explanation of their findings. T. 16, 111, 122, 131, 173-74. For example, as set forth above, Dr. Inman stated that he "reviewed all the evidence in the file and the assessment of 5/7/21. The CE PhD opined moderate to marked to marked limitations, which is not c/w the evaluation, the other records in file, the absence of psych tx, and ADLs." *Id*. at 151. The ALJ also stated their opinions were consistent with the objective findings and lack of formal mental health treatment. *Id*. at 16.

Lastly, "[i]n the absence of any evidence suggesting a greater restriction than the ALJ discussed or credited, it cannot be said that the ALJ's failure to include a more explicit consideration regarding the RFC finding was harmful, even if it could be found to be erroneous." *Donna L*, 2024 WL 3738067, at *2; *see Mark E . v. Kijakazi*, 20-CV-0425, 2021 WL 4168590, at *7 (N.D.N.Y. Sept. 14, 2021) (Scullin, J.) (finding that error was harmless where "it would not alter the outcome of his claim"). It is Plaintiff's burden to show that greater restrictions are required by the evidence, and he has not done so in this instance. *See Sandra D. v. Comm'r of*

*Soc. Sec. Admin.*, 20-CV-1067, 2022 WL 344058, at *5 (N.D.N.Y. Feb. 4, 2022) (Kahn, J.)

(noting that "a plaintiff bears the burden of demonstrating disability and the necessity of a

greater RFC") (citing *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018)).

**B.    Physical Impairments**

Plaintiff also argues the ALJ's physical RFC is not supported by substantial evidence

because the ALJ did not properly evaluate the opinions of consultative examiner Najiib Azad,

D.O., and State agency medical consultants J. Lawrence, M.D., and D. Miller, D.O.  *See*

*generally*, Dkt. No. 14 at 21-23; Dkt. No. 16 at 6-7.  For reasons explained below, the Court

finds substantial evidence supports the ALJ's RFC determination.

On April 15, 2021, Plaintiff was consultatively evaluated by Dr. Azad.  T. 531-33.

Plaintiff explained that he sustained a traumatic brain injury and removal of his left eye after a

fireworks accident in 1996.  *Id*. at 531.  In 2017, his left ring finger was amputated following a

gunshot wound.  *Id*.  Plaintiff also reported headaches, problems with concentrating, and

"get[ting] angry a lot."  *Id*.  He complained of arthritis in the neck that "comes and goes" and

neuropathy in his feet.  *Id*. at 531.  Plaintiff lives alone, cooks daily, cleans twice a week, does

weekly laundry, and showers, bathes, and dresses himself daily.  *Id*.  He watches television and

listens to the radio.  *Id*.  He does not play sports or socialize with friends and does not have a

hobby.  *Id*.

During the examination, Plaintiff appeared to be in no acute distress.  *Id*. at 532.  His gait

and stance were normal and he was able to squat 50%.  *Id*.  He was able to walk on his heels, but

not on his toes.  *Id*.  Plaintiff used no assistive devices, and needed no help changing for the

examination or getting on and off the examination table.  *Id*.  He was able to rise from a chair

without difficulty.  *Id*.

The examination of Plaintiff's right eye was normal and no testing was performed on his prosthetic left eye. *Id*. Plaintiff's physical examination revealed decreased range of motion of the cervical spine and lumbar spine. *Id*. Straight leg raising testing was negative bilaterally. *Id*. Plaintiff had decreased range of motion of both shoulders. *Id*. at 533. Plaintiff had full range of motion of the elbows, forearms, wrists, hips, knees, and ankles bilaterally. *Id*. Deep tendon reflexes were physiologic and equal in the upper and lower extremities. *Id*. Plaintiff had "absent light touch sensation in his arms and allodynia to gross touch." *Id*. His strength was 5/5 in the upper and lower extremities. *Id*. Plaintiff's hand and finger dexterity was intact on the right and moderate and limited on the left. *Id*. His grip strength was 5/5 bilaterally. *Id*. Plaintiff was able to zip, button, and tie normally. *Id*. Plaintiff's prognosis was stable. *Id*. In a medical source statement, Dr. Azad opined Plaintiff "will have moderate limitations sitting, standing, walking, bending, lifting, carrying, no limitations kneeling, moderate limitations reaching, moderate limitations handling objects." *Id*. The ALJ found Dr. Azad's opinion somewhat persuasive. *Id*. at 19.

On May 6, 2021, Dr. Lawrence reviewed the record, including Dr. Azad's opinion, and determined Plaintiff is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about 6 hours during an 8-hour workday; sit about 6 hours during an 8-hour workday; push and/or pull with the above weight limits; could occasionally climb ladders, ropes, and scaffolds; has no limitation with the right eye and limited (no) vision in the left eye due to left eye prosthesis; and must avoid even moderate exposure to hazards (machinery, heights, etc.). *Id*. at 113-17. On July 30, 2021, Dr. Miller affirmed the opinion of Dr. Lawrence. *Id*. at 155-59. The ALJ found Drs. Lawrence and Miller's opinions somewhat persuasive. *Id*. at 19.

20

Here, contrary to Plaintiff's argument, the ALJ reasonably found Dr. Azad's opinion to be somewhat persuasive. Dkt. No. 14 at 21-22; Dkt. No. 15 at 9-10. The ALJ explained Dr. Azad "did not diagnose the claimant with any impairment involving the arms or shoulders and the restricted range of motion of the upper extremities is inconsistent with the other records in the file. While the opinion is generally supported by the findings during the examination, the opinion lacks specifics that would render the opinion more persuasive." *Id.*

For example, the ALJ noted treatment and examination notes reflect Plaintiff has good strength and sensation has been normal in the upper and lower extremities. *Id.* at 19, 560, 574, 577, 583, 585, 586. Treatment records routinely reflect "normal" or "full" range of motion of Plaintiff's upper extremities and do not mention any upper extremity impairments. *Id.* at 19, 572, 574, 577, 583, 585, 604, 607, 610, 611. The record indicates Plaintiff does dishes and laundry, "suggesting a significant ability to perform fine and gross manipulations as well as use of the upper extremities." *Id.* at 19, 58, 527, 531. The ALJ also noted Plaintiff's reported daily activities, such as dressing, bathing, driving, and riding a 4-wheeler suggest that the claimant is not as limited as alleged. *Id.* at 19, 527, 531.

As noted above and in accordance with the regulations, the ALJ was required to explain how he considered the supportability and consistency factors of a medical source's opinions or prior administrative medical findings in the decision. 20 C.F.R. §§ 404.1520(c)(b)(2), 416.920c(b)(2). The ALJ did that here and Plaintiff's argument that the ALJ improperly evaluated Dr. Azad's opinion is without merit. Dkt. No. 14 at 24-26.

Additionally, the Court does not find the ALJ rejected Dr. Azad's opinion in favor of his own lay judgment. Dkt. No. 14 at 21-22. Rather, the ALJ also found Dr. Lawrence's and Dr. Miller's opinions to be somewhat persuasive, both of whom reviewed the available record

including Dr. Azad's opinion, and assessed no reaching or manipulative limitations.  Dkt. No. 15 at 10; T. 19, 102, 113-18, 133-38, 154-59, 164, 176-81.  When the consultative examiner and reviewing physicians reached different conclusions with reaching and handling limitations, this created a conflict in the record.  It is the province of the ALJ to resolve genuine conflicts in the record.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  However, the Commissioner need not "reconcile explicitly every shred of medical testimony."  *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).

In any event, moderate limitations as opined by Dr. Azad are not inconsistent with light work.  *See Amanda L. v. Saul*, 18-CV-01221, 2019 WL 5865388, at *8 n.3 (N.D.N.Y. Nov. 8, 2019) (Mordue, J.) ("[M]oderate limitations to repetitive lifting, bending, reaching, pushing, pulling, or carrying are not inconsistent with an RFC for a full range of light work.") (internal quotation marks and citation omitted); *Moore v. Comm'r of Soc. Sec.*, 16-CV-270, 2017 WL 1323460, at *8 (N.D.N.Y. Apr. 10, 2017) (Stewart, M.J.) ("[M]oderate limitations for sitting, standing, walking, bending, climbing stairs, and lifting or carrying heavy objects . . . [are] consistent with light work."); *Martinez v. Comm'r of Soc. Sec.*, Civ. No 13-159, 2016 WL 6885181, at *13 (S.D.N.Y. Oct. 5, 2016) ("[M]oderate restrictions for lifting, pushing, pulling, overhead reaching, stooping, squatting, prolonged standing, and prolonged walking . . . are consistent with an RFC for light work."); *Thola J.W. v. Comm'r of Soc. Sec.*, 19-CV-1068, 2021 WL 981589, at *2 (N.D.N.Y. Mar. 16, 2021) (Sharpe, J.) (finding RFC for a full range of light work was consistent with moderate limitations in lifting, carrying, pushing, and pulling).

Plaintiff also argues the ALJ failed to articulate the supportability and consistency factors when evaluating Dr. Lawrence's and Dr. Miller's opinions.  Dkt. No. 14 at 22.  But as the Commissioner points out, the ALJ referred to the exhibits containing the opinions of Drs.

Lawrence and Miller, who each provided a detailed explanation of their findings and are consistent with each other.  Dkt. No. 15 at 10; T. 16, 102, 113-18, 133-38, 142, 154-59, 164, 176-81; *see, e.g.*, *Holly R. v. Comm'r of Soc. Sec.*, 23-CV-0132, 2023 WL 8797938, at *2 (W.D.N.Y. Dec. 19, 2023).  Indeed, Drs. Lawrence and Miller explained Dr. Azad's "opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion.  The CE examiner`s opinion is an overestimate of the severity of the individual's restrictions/limitations."  T. 118, 138.

The ALJ discussed the medical records and the opinions upon which he relied to assess Plaintiff's RFC.  *See id.* at 19.  The RFC largely tracks the opinions of record the ALJ found persuasive and the ALJ was not obligated to adopt every limitation set forth in a medical opinion he found persuasive.  *See Edward J.*, 2022 WL 4536257, at *5.  Nor, contrary to Plaintiff's argument, was the ALJ required to accept Plaintiff's subjective complaints regarding his limitations.  *See* Dkt. No. 14 at 22-23; Dkt. No. 15 at 10-14.  The ALJ considered Plaintiff's testimony at the hearing and the above opinions and reasonably determined Plaintiff retained the RFC to perform light work with the additional limitations.

Based upon a careful review of the record, and affording the ALJ's decision the appropriate deference, the Court concludes substantial evidence supports the ALJ's RFC determination.  Accordingly, remand is not necessary.

VI.    **CONCLUSION**

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) be **DENIED**, and it is further

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) be **GRANTED**, and the Commissioner's decision be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 30, 2024
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge